UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ERIN ELIZABETH WARD, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>Kilolo Kijakazi,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No.: 4:20-cv-02366-TER<br><br><br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for SSI on January 13, 2017, alleging inability to work since July 3, 2015. (Tr. 15). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on March 27, 2019, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 10, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr.

---

[1] Recently, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

15-27). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on May 18, 2020, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court on June 23, 2020. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

Plaintiff was born on September 2, 1981, and was thirty-five years old on the application date. (Tr. 25). Plaintiff had at least a high school education and past work experience as a loan officer, cashier checker, and pharmacy tech. (Tr. 25). Plaintiff alleges disability originally due to depression, mood disorder, anxiety, carpal tunnel, asthma, bladder issues, stomach issues, and skin issues. (Tr. 135). Relevant records will be summarized under pertinent issue headings.

**C.     The ALJ's Decision**

In the decision of June 10, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 15):

1. The claimant has not engaged in substantial gainful activity since January 13, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: carpal tunnel syndrome; chronic obstructive pulmonary disease; obesity; generalized anxiety disorder; panic disorder without agoraphobia; and recurrent major depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could never crawl or climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. The claimant could perform frequent but not constant handling and fingering bilaterally. The claimant must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. The claimant must avoid concentrated exposure to respiratory irritants such as dust, fumes, gases, and extreme cold and heat. The claimant could perform simple, routine

       tasks for two hour blocks of time with normal rest breaks during an eight-hour workday. The claimant could tolerate low stress work defined as occasional decision-making and occasional changes in the work setting. The claimant could never interact with the general public but could occasionally interact with co-workers.

5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.     The claimant was born on September 2, 1981 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 13, 2017, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ improperly rejected Dr. Jamison's treating opinions. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.    LEGAL FRAMEWORK**

    **1.    The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

3

be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Opinions: Dr. Jamison**

Plaintiff argues the ALJ erred in evaluating treating opinions by Dr. Jamison

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The

medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Even when a treating opinion is not entitled to controlling weight, "it does not follow that the ALJ ha[s] free reign to attach whatever weight to that opinion that he deem[s] fit." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). It must be "apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to

give the opinion." *Id.* The Fourth Circuit Court of Appeals found where only the factors of supportability and consistency were discussed by the ALJ and other factors of length, frequency, nature, and extent of treating relationship were ignored, it was error necessitating remand. *Id.* "20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (emphasis in original).

On December 17, 2016, Dr. Jamison completed a questionnaire. (Tr. 391). Plaintiff could not perform work on a 40 hour a week basis that involved more than one and two step processes. If she attempted work on such basis, it was probable that she would have problems with attention and concentration sufficient to frequently interrupt tasks during the work day. The basis given for the opinion was history of psychiatric testing, medication management, and counseling. The latest date Dr. Jamison was sure Plaintiff was disabled was December 17, 2016. (Tr. 391)(Exhibit C5F).

On August 1, 2017, Dr. Jamison opined the following letter:

Erin Ward's current diagnoses include generalized anxiety disorder, panic disorder without agoraphobia, and recurrent major depressive disorder. I have been seeing Ms. Ward as her psychiatrist between once a month and once every 3 months for about 10 years. She also gets counseling at our office about twice a month. She has not had a significant gap of time in treatment with me since I started seeing her, and if I indicated otherwise on a form, that was a clerical error.

I have studied Ms Ward's behavior for years. When she becomes anxious, I have observed that she tends to become loud, get red in the face, and become agitated. If there are other people in the waiting room with her, she becomes anxious and agitated to the point that she must wait in a separate room with my office manager. When she and I discuss typical social interactions such as the sort involved in a shopping trip to Walmart, I observe her becoming red in the face, talking loudly, and becoming agitated. I give her assignments that involve simple social interactions, and she continues to have great difficulty doing those assignments, because they cause anxiety and agitation to the point that she often loses control of her emotions.

> She has always been working hard with us to get her condition under better control. When I began treating Ms. Ward, we worked together in a struggle to bear up to the stress of work, which struggle we finally had to reluctantly abandon. Now that she is a parent, we are having a similar struggle, and we are only partially successful in the struggle to maintain the most basic parental social interactions such us those involved in attendance at a parent/teacher conference or a basketball game.
>
> In a work setting, she is going to encounter many such social interactions, such as redirection from a supervisor, and I am quite sure that she would tend to overreact in this same highly inappropriate way. And, knowing that work will involve such interactions, she would become avoidant of such situations to the point that she would leave the work place or not come in to work. Therefore, it is most probable that she would behave highly inappropriately when interacting with others in the workplace, and interruptions to normal work tasks would be frequent.
>
> I am sometimes able to help her bring her emotions under control in the secure environment of my office. But in a normal work setting, skilled psychiatric help and a secure environment are not going to be available to help her regain control of her emotions. She is taking her medications at rather high dosages because of the severe nature of her psychological conditions.
>
> Ms. Ward also has asthma that makes her anxiety worse, and her anxiety makes her more prone to have asthma attacks. She has had the limitations I describe here, and on the questionnaires I have previously completed, at least since the last time she tried to work.
>
> My office notes do not include my observations of her behavior because this is baseline behavior for her, and my office notes are notes to myself. Further, when she is with me, though she is often agitated, she is calmer than she would be in a work environment because I have known her for a long time and because she is comfortable with me.
>
> When I indicate that she is "stable," I mean that she is functioning as well as possible on the medications she is on now. When I say she is able to perform activities of daily living, I mean that she can usually- but not always - do things like shower, feed herself, and care for her basic needs and her children's basic needs.

(Tr. 459-460).

On March 19, 2019, Dr. Jamison noted in a typed letter that was typed by Plaintiff's attorney after an interview (with written in that it needed to be corrected grammatically):

> I am board certified in psychiatry by the American Board of Psychiatry and Neurology. I have treated her for over 13 years, and I remember when she worked, when she was taken out of work, and when she had an unsuccessful work attempt. While treating Erin Elizabeth Ward at Envision Wellness Medical Group, I diagnosed Ms. Ward with mood disorder, panic disorder, and unspecified depressive disorder. Ms. Ward suffers from occasional agitation, panic attacks, decreased appetite, elevated energy, impaired concentration, decreased physical activity, headaches, fair judgment, and fair insight. "Slight," as I used in my treatment records, indicates that the symptoms are not severe enough to require hospitalization and can be treated in an outpatient environment. "Slight," as I used in my treatment records, is not meant to suggest that Ms. Ward does not have significant psychiatric impairment. Ms. Ward avoids stress situations to deal with panic attacks. I have prescribed neuroleptic medication (like Abilify) to treat her condition w[hich] reflect[s] how serious her condition is. Ms. Ward wants to be a good mother, but Ms. Ward avoids going out of her home except where she needs to help her children. Due to her anxiety, Ms. Ward has poor ability to relate to others. Ms. Ward is comfortable seeing me and she is not as stressed, which makes her mental status exams show normal findings. Ms. Ward's mental condition is serious and persistent over a period of over 13 years, and she has undergone psychiatric treatment that is ongoing and that diminishes the symptoms and signs of her mental condition and Ms. Ward has a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. If she attempted to return to even part time work, Ms. Ward would have problems with attention and concentration sufficient to interrupt tasks more than 15% of the working portion of the workday if she attempted to work on an 8 hour day, 5-day per week basis. Ms. Ward would be seriously limited in her ability to meet competitive standards of functioning in the workplace regardless of the degree of skill involved because she could not handle the additional stress that would accompany performing any job. Ms. Ward would have marked limitations in her ability to function if she attempted to return to work, Ms. Ward's condition and these limitations have existed since at least July 2015. Ms. Ward's condition is chronic and full remission is not expected.

(Tr. 701).

The ALJ found:

> Ayanna Jamison, M.D., the claimant's treating mental health specialist, opined in August 2017 that the claimant became agitated when anxious and agitated when shopping in public. She opined the claimant had difficulty with social interaction due to anxiety and she tended to lose control of her emotions. In a work setting, Dr. Jamison anticipated the claimant would tend to overreact inappropriately when interacting socially and avoid social interaction during work such that she would miss work. (l 2F)

10

>Dr. Jamison submitted another statement in March 2019 opining that the claimant had an unsuccessful work attempt. She reported that she diagnosed the claimant with mood disorder, panic disorder, and unspecified depressive disorder with symptoms including occasional agitation, panic attacks, decreased appetite, elevated energy, impaired concentration, decreased physical activity, headaches, fair judgment, and fair insight. She reported the claimant avoided stressful situations due to panic attacks and tended to not leave home unless it was to help her children. She opined the claimant had poor ability to relate to other people and had minimal capacity to adapt to changes in her environment or to demands that were not already part of her life. She opined that if the claimant attempted to return to even part-time work, she would have problems with attention and conversation, which would interrupt more than 15% of the workday.
>
>She opined the claimant would not be able to meet competitive standards, could not handle work stress, and would have marked limitations in her ability to function if she attempted to return to work. (C25F)
>
>I did not afford Dr. Jamison's opinions great weight because they imposed much greater limits on the claimant's functioning than the limitations shown in the record, and the opinions were not supported by the longitudinal evidence in the record. For example, during the hearing, I questioned the claimant as to why Dr. Jamison opined the claimant would behave inappropriately in the workplace, and the claimant testified that she had mood swings and did not get along with other people, but the claimant did not have difficulty getting along with me during the hearing. (C12F) Furthermore, objective evidence of record contradicted the opinions, showing the claimant had a stable mood and her anxiety was manageable but for some stress arising from parenting. (C22F; C24F)

(Tr. 24-25).

As to the December 2016 questionnaire, Plaintiff argues the ALJ failed to weigh it. (ECF No. 12 at 32). Defendant notes the ALJ did not mention the specific opinion and it predated the relevant period. (ECF No. 13 at 17). Defendant argues that the ALJ weighed all the "opinions" collectively as to Dr. Jamison and did not state he was declining to consider the December 2016 opinion. (ECF No. 13 at 17). To the extent there was any error arguendo in not expressly summarizing and weighing the December 2016 questionnaire, such is not outcome determinative error as similar opinions were made by Dr. Jamison later and expressly weighed by the ALJ.

As to the ALJ's statement in weighing Dr. Jamison's opinion that Plaintiff "did not have difficulty getting along with [the ALJ] during the hearing," this is not the sole reason the ALJ relied on in not giving Dr. Jamison's opinion great weight.

The ALJ cited to objective evidence that contradicted the opinions, where Plaintiff had normal exams and her condition was manageable, citing Exhibits C22F and C24F. Viewing the ALJ's opinion as a whole, elsewhere the ALJ noted Plaintiff was taking mental health medications prior to the application date and that the May 2017 consultative exam showed normal mood/affect, citing to exhibit C11F. (Tr. 22). The ALJ noted consideration of mental health treatment records from 2018 forward that Plaintiff had good insight/judgment, euthymic mood, normal speech, appropriate behavior and thought content, good attention/concentration, intact memory, and full orientation. (Tr. 22). "She experienced stressful and overwhelming situations at times due to issues with her children, but her mood remained stable and she otherwise functioned well." The ALJ cited to Exhibit C24F. (Tr. 22).

Exhibits C11F, C22F, and C24F, cited and relied on by the ALJ are summarized below. On May 20, 2017, Plaintiff was examined by consultant Dr. Shrouder, M.D. (Tr. 455). Upon exam, Plaintiff was cooperative, had normal mood/affect, and followed simple commands. (Tr. 456). Plaintiff completed the mini-mental test without any difficulty. (Tr. 457). "In terms of her mentation, she had a completely normal mental exam, her mood and affect are appropriate. She is able to follow simple commands." (Tr. 457). Exhibit C22F begins in 2011, but the alleged onset date here is 2015. (Tr. 664). On July 16, 2015, Plaintiff was seen by Dr. Jamison, M.D. at the Envision Wellness Medical group. Plaintiff had depressed mood, logical and goal directed thought processes, no hallucinations, fair judgment/insight, and good eye contact. Assessment was no change and declined

condition. Plaintiff had (Tr. 669). Plaintiff reported low energy and crying spells. Plaintiff reported anxiety was manageable. Relationships, family, motherhood, stressors, and coping were discussed. (Tr. 669). Plaintiff was to continue current treatment/medications. (Tr. 669). On September 29, 2015, Plaintiff was seen by Dr. Jamison. (Tr. 670). Plaintiff reported stable mood and manageable anxiety. Plaintiff avoided stressful situations. Plaintiff reported improved concentration with medication. Plaintiff discussed motherhood, family, interactions with children's "father," stressors, and management. (Tr. 670). Upon exam, Plaintiff had good eye contact no psychomotor symptoms, euthymic mood, and fair judgment/insight. Assessment was stable and no change. (Tr. 670). Plaintiff was to continue current treatment/medications. On October 25, 2016, Plaintiff was seen by Dr. Jamison. Plaintiff reported that mood continues to be stable and anxiety is manageable. Concentration continued to be impaired. Sobriety, parenting, and management of stress were discussed. (Tr. 671). Plaintiff had a normal exam in all categories with fair judgment/insight. (Tr. 671). Assessment was no change and stable. (Tr. 671). Plaintiff was to continue current treatment/medications. On June 12, 2018, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, good insight/judgment, and appropriate interview behavior. (Tr. 676). Plaintiff reported being stable on medication. Plaintiff had slight agitation but was managing anxiety. Plaintiff's recent decision to break up with her boyfriend and father of her children was discussed. (Tr. 676). It was noted Plaintiff's response to mediation was "symptoms improve with medication." (Tr. 677). On July 2, 2018, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, good insight/judgment, and appropriate interview behavior. Under subjective, Plaintiff reported: "Mood is stable. Mood is anxious. Reports panic attacks." Family interactions were discussed. (Tr. 679). Symptoms improved with medications.

13

(Tr. 680). Assessment was mildly worse than prior visit. On August 28, 2018, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, good insight/judgment, and appropriate interview behavior. Plaintiff reported an increase in stress with her children returning to school. "Otherwise, she is doing well." Plaintiff's mood was stable with her managing anxiety. Concentration was impaired under subjective despite objective exam of good attention/concentration. Parenting was discussed. (Tr. 682). "Symptoms are stable with medication." (Tr. 683). Assessment was mildly improved from prior visit. (Tr. 683). On September 19, 2018, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, good insight/judgment, and appropriate interview behavior. Plaintiff reported "losing it" and being overwhelmed getting children ready for school. Plaintiff reported increase in situational anxiety. "Otherwise, mood is stable. Energy and concentration are appropriate." (Tr. 685). "Symptoms are improving with medication." (Tr. 686). On November 6, 2018, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, good insight/judgment, and appropriate interview behavior. (Tr. 688). Plaintiff reported slight increase in mood symptoms with stressors, then it states "Calmer. More focused. Taking a little longer to complete task." Plaintiff reported the father of her children and his adult son moved back into the home. Coping skills were discussed. (Tr. 688). "Symptoms are improving with medication." (Tr. 689). Assessment was mildly worse than prior visit. (Tr. 689). On December 5, 2018, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, good insight/judgment, and appropriate interview behavior. (Tr. 691). Plaintiff reported she was going with the flow. The children's father moved out again but still was in the home every day. "Mood is stable. Continues to describe anxiety." "Energy is appropriate. Concentration is slightly impaired," under subjective, but "good" under objective. (Tr.

691). Response to medication was "symptoms are stable." (Tr. 692). On February 4, 2019, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, anxious/depressed mood, good insight/judgment, loud speech, and appropriate interview behavior. (Tr. 694). Plaintiff reported up and down mood and increased mood symptoms, possibly triggered by stressors. Under subjective, concentration was impaired despite objective of good attention/concentration. Coping skills for current issues were discussed. (Tr. 694). Response to medication was symptoms are stable. (Tr. 695). Assessment was mildly worse than prior visit. (Tr. 695). On February 27, 2019, Plaintiff was seen by Dr. Jamison. Plaintiff had good attention/concentration, appropriate affect, anxious mood, good insight/judgment, normal speech, and appropriate interview behavior. (Tr. 697). "She continues to be stable. Managing anxiety. Occasional agitation. Describes avoidance of stressful situations." "Energy and concentration impairment are stable." Parenting and relationships were discussed. (Tr. 697). Response to medication was symptoms are stable. (Tr. 698).

The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. Even with some evidence of abnormal reports, the ALJ provided more than a mere scintilla of record support for the weight given to Dr. Jamison's opinions. The ALJ complied with the applicable regulations in making clear to a subsequent reviewer the reasons for the findings made. The ALJs decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the

Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| September 16, 2021 | s/ Thomas E. Rogers, III |
| Florence, South Carolina | Thomas E. Rogers, III |
|  | United States Magistrate Judge |